UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| STEVEN E. BYRNE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2: 08-102-DCR |
| ) | |
| V. ) | |
| ) | |
| WOOD, HERRON & EVANS, LLP, et al., ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Steven Byrne alleges legal malpractice and breach of fiduciary duty claims against Defendants Wood, Herron & Evans LLP and several individually-named patent attorneys (collectively, the Defendants). [Record No. 69] Byrne's contends that, because of the Defendants' negligence, unnecessary language was included in his patent limiting its scope. Byrne claims that but for the unnecessary language in the patent, he would have prevailed in his patent infringement suit against Black & Decker.

The Defendants seek partial summary judgment[1] on the ground that Byrne has not presented a viable legal malpractice claim. The Defendants have also filed two additional motions to strike portions of Byrne's and patent attorney William David Kiesel's affidavits which were submitted in support of Byrne's brief opposing summary judgment.

---

[1]  Byrne filed an Amended Complaint adding a second claim of legal malpractice after this motion for summary judgment was submitted. Therefore, the Defendants' motion will be construed as only a partial motion for summary judgment on the first legal malpractice claim.

For the reasons explained below, the motion to strike portions of Kiesel's affidavit will be granted insofar as he provides testimony on the issue of legal malpractice in the patent application process. Without this expert testimony, Byrne cannot establish a *prima facie* legal malpractice claim, because he cannot demonstrate that the Defendants' failure to obtain a broader patent on Byrne's behalf constituted negligence. Accordingly, the Defendants' motion for partial summary judgment will be granted, and their motion to strike portions of Byrne's affidavit will be denied as moot.

## I.     BACKGROUND

In 1989, while operating a landscaping company, Byrne invented a stabilizing guide for the string, known as a flail, on a weed trimmer. The guide stabilized the flail during rotation, which permitted the weed trimmer to make a straight cut while being held in a vertical position. Essentially, a weed trimmer equipped with Byrne's invention could be used effectively as an edger for curbs and sidewalks.

In 1990, Byrne hired the Defendants to prepare and prosecute a patent application for his invention. This patent application resulted in the issuance of U.S. Patent No. 5,115,870 (the '870 patent) in May 1992. However, in December 1992, the Defendants filed a reissue application on Byrne's behalf because errors in the '870 patent resulted in a failure to claim the full scope of patent rights to which Byrne was entitled. The only error relevant here was the failure to claim that the guard and guide means had a bearing surface positioned relative to the flail's rotating path, which stabilized the flail's wobble during rotation. In January 1995, U.S. Letters

Reissue Patent No. 34,815 (the '815 patent) was issued to Byrne, and it contained the term "generally planar flail stabilizing surface" in every reissue claim.

In 2004, the Defendants filed a patent infringement action against Black & Decker on Byrne's behalf, alleging violations of the '815 patent. Common to all fourteen infringement claims asserted against Black & Decker was a description of the portion of the device that stabilizes the flail as having or including "a generally planar surface." Thus, the focus of the summary judgment inquiry was whether the wire edge guide on the Black & Decker trimmers included "a generally planar surface." Relying on the dictionary definition of the term "surface," this Court (per Judge William O. Bertelsman) concluded that the Black & Decker wire edge guide did not have a "surface" so as to bring it within the claim limitations of the '815 patent. Therefore, summary judgment was granted in favor of Black & Decker. *See Byrne v. Black & Decker Corp.*, No. 04-262, 2006 U.S. Dist. LEXIS 24104 (E.D. Ky. Apr. 27, 2006).

On appeal, the Federal Circuit held that it was an error to rely on the dictionary definition of the word "surface" and that the wire edge guide on the Black & Decker trimmers did have a "surface." However, after *de novo* review, the Federal Circuit affirmed the grant of summary judgment on the grounds that the surface on the Black & Decker wire edge guide was not "generally planar." *Byrne v. Black & Decker Corp.*, 235 F. App'x 741, 745–46 (Fed. Cir. 2007) (unpublished). Specifically, the Federal Circuit concluded that:

> The surface of the U-shaped wire edge guide may lie in a plane, but it is not itself "generally planar" as required by the claims and the written description of the '815 patent. Though the U-shaped wire edge guard has a surface, this surface is not "generally planar" because it lacks the two dimensional nature described in the prosecution history. Furthermore, because our claim construction excludes a narrow circumferential lip based on a disclaimer made during prosecution, the

> U-shaped wire edge guard, which is also narrow, cannot be covered by the claims. Hence, Black & Decker's accused devices do not infringe the '815 patent.

*Id.* at 746.

After losing his patent infringement action in this Court and on appeal, Byrne filed claims for legal malpractice and breach of fiduciary duty against the Defendants. He alleges the Defendants acted negligently in the patent application/reapplication process by having the term "generally planar" included in the '815 patent's claims. Byrne contends the Defendants should have pursued his hypothetical claim, which did not include this term. He further asserts the hypothetical claim would have been patentable over the prior art, *i.e.*, the Bartholomew Patent.

In their motion for summary judgment, the Defendants argue inclusion of the term "generally planar" was necessary for Byrne's invention to be patentable in light of the Bartholomew Patent. Therefore, they contend that failure to obtain a broader patent without this term in its claims does not constitute negligence. And because Byrne cannot prove negligence, the Defendants assert that he cannot prevail on his legal malpractice claim.

Byrne filed two affidavits opposing the motion for summary judgment: the first contains his own testimony, and the second contains the proposed expert testimony of a patent attorney, David William Kiesel. Kiesel's affidavit is submitted for the purpose of establishing the Defendants' negligence. In response, the Defendants filed motions to strike significant portions of the affidavits.

## II. DISCUSSION

To establish a legal malpractice claim in Kentucky, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) the attorney neglected his duty to exercise the

ordinary care of a reasonably competent attorney acting in the same or similar circumstances – *i.e.*, attorney negligence; and (3) the attorney's negligence was the proximate cause of the damage to the client. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). It is undisputed that an attorney-client relationship existed between Byrne and the Defendants. However, to survive summary judgment, expert testimony is needed to establish that the Defendants acted negligently unless their negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it. *See Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. App. 2004).

The negligence alleged in this case would not be readily apparent to a layperson. Byrne alleges the Defendants acted negligently by:

> not properly prosecuting the patent, including by employing the generally planar surface language in all of the reissue claims, by using the generally planar surface language while failing to make clear in the specifications and history that this was not limited to "a two-dimensional surface that is not narrow, but has a width less than the fee increment of the trimmer head," by not obtaining the hypothetical claim described herein, [and] for all the other reasons set forth herein and otherwise.

[First Amended Complaint, Record No. 69, pp.8–9]

The assistance of an expert witness is necessary to assist the trier of fact in determining whether the Defendants acted negligently in failing to obtain a broader patent. Byrne submits Kiesel's affidavit for this purpose. He contends Kiesel is qualified to give expert testimony in the following areas: (1) patent law; (2) the practice of patent attorneys in patent drafting; (3) patent prosecution; and (4) evaluating patent infringement and/or validity issues. Byrne further claims that Kiesel has "an extensive technical background in the physics and mechanical science utilized in the construction of the trimmers of the invention."

The Defendants dispute whether Kiesel is qualified to provide expert testimony in several areas in which Byrne claims Kiesel possesses expertise. However, these issues need not be addressed, because Kiesel is not qualified to provide expert testimony on the issue of legal malpractice in the patent application process. Since Byrne presents no other testimony from a witness who could qualify as an expert in this area, he is unable to establish the Defendants' negligence. Therefore, Byrne's legal malpractice claim cannot survive summary judgment.

### A.     Kiesel Is Not Qualified To Provided Needed Expert Testimony.

Before a witness can provide expert testimony, the witness must be qualified as an expert by his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Kiesel earned a B.S. in mathematics, a M.S. in nuclear engineering, and a law degree from Louisiana State University. He has worked as a patent attorney for nearly forty years, and has taught courses on patent law as an adjunct professor at Louisiana State University Law School. In addition, Kiesel's *curriculum vitae* notes that he has prepared expert reports and/or provided expert testimony on patent-related issues in numerous federal and state cases.

While Kiesel's extensive practical experience in patent law may qualify him as an expert in some areas, Byrne has not demonstrated that Kiesel possesses any expertise in the specific area of legal malpractice in the patent application process. His *curriculum vitae* does not indicate that he has ever written or spoken professionally on this issue. While the presence of these factors is not a requirement to be qualified as an expert witness, their absence is particularly meaningful where the sole basis for Kiesel's expertise is his practical experience.

Kiesel's *curriculum vitae* does indicate that he has prepared expert reports and/or provided expert testimony concerning legal malpractice in one federal and three state law cases.[2] However, this fact is of little consequence. There do no appear to be any opinions from these four cases in which Kiesel's qualifications as an expert were discussed. It is unclear whether any of these courts actually qualified Kiesel as an expert on the issue of legal malpractice or if he merely prepared an expert report or affidavit testimony on the issue as he has done in this case. In addition, based on the brief descriptions of the issues presented in these four cases, it does not appear that these cases involved claims of legal malpractice in the patent application process. Rather, the four cases in which Kiesel claims to have prepared expert reports and/or provided expert testimony on the issue of legal malpractice list the other issues in the case as "patent infringement, patent validity, and damages." So even if he had been qualified as an expert on the issue of legal malpractice in these cases, the information in his *curriculum vitae* suggests he was qualified as an expert on legal malpractice in patent infringement/invalidity actions, and not in cases where the legal malpractice claim is based on the attorney's allegedly negligent actions during the patent application process. Thus, based on the information provided in Kiesel's *curriculum vitae*, he does not have any experience providing expert opinions the issue of legal malpractice in the patent application process.

If Kiesel is to qualify as an expert on the issue of legal malpractice in the patent application process, it will have to have to be based solely on his nearly forty years of

---

[2] *See Hill, Steadman & Simpson, P.C. v. Axxess Entry*, Civil Action No. 90-3854 (N.D. Ill.); *Bryon A. Donzis v. PHK, P.C., et al.*, Civil Action 99-53-683 (Tex. – 133rd Judicial Dist. Ct.); *Anodyne Corp. v. Klaas, Law, O'Meara & Malkin, P.C.*, Civil Action No. 97-CV7129 (Col. – Denver Dist. Ct.); *Luv 'N Care v. Ezra Sutton, et al.*, Civil Action No. 96-0514 (La. – 4th Judicial District Ct.).

experience as a patent attorney. Kiesel's *curriculum vitae* notes that he has written and prosecuted over 500 patent applications since 1972, so he undoubtedly has significant experience in the patent application process. However, Kiesel does not appear to have any specialized experience, training, skill, or education in *legal malpractice* as it relates to the patent application process. His extensive experience with the patent application process alone does not necessarily qualify him as an expert on the issue of legal malpractice in the patent application process.

The issue of qualifying a witness as an expert in legal malpractice on the basis of significant legal experience was recently addressed by the Northern District of Texas in *Cadle Co. v. Sweet & Brousseau, P.C.*, No. 3:97-CV-298-L, 2006 U.S. Dist. LEXIS 6862 (N.D. Tex. Feb. 23, 2006). In *Cadle*, the plaintiff retained former Texas Supreme Court Justice James P. Wallace to provide expert testimony on the issue of legal malpractice. During a pretrial hearing, the plaintiff argued that Wallace was qualified to provide expert testimony on the issue of legal malpractice based on his knowledge and experience as a former practicing attorney, a trial court and intermediate appellate judge, and a Texas Supreme Court justice. The defendants argued the plaintiff could not qualify Wallace as an expert "merely by showing that he is a licensed attorney, or even 'a former trial and appellate judge.'" *Cadle Co.*, 2006 U.S. Dist. LEXIS 6862 at *10–11. Following the hearing, the court informed the parties that it was inclined to rule in the defendants' favor unless the plaintiff could provide supplemental information demonstrating that Wallace possessed "specialized knowledge or experience about the legal malpractice issues involved in the case which could assist the trier of fact in understanding the evidence or determining a fact in issue." *Id.* at *11.

The plaintiff filed supplemental information including a portion of Wallace's deposition in which Wallace explained that he now worked for a firm providing full-time expert witness work, and that "the biggest majority" of the expert opinions he gave were on issues of legal malpractice. However, after reviewing the supplemental filings, the court held that Wallace was not qualified to provide expert testimony on the issue of legal malpractice involved in the case. The court explained:

> The court determines that all which may be inferred from [the plaintiff's] supplemental materials is that when Wallace has conducted expert work, he has done so primarily in legal malpractice cases. The court remains in the dark about the particular malpractice issues Wallace addressed in such cases, as well as whether such cases proceeded to trial. The Fifth Circuit has stated, albeit pre-*Daubert*, that a medical degree alone is not enough to qualify a physician to give an opinion on every conceivable medical question. By analogy, that a person may be a licensed attorney, or even a judge, who holds years of experience in the practice of law, standing alone, will not qualify him or her to give an opinion on every conceivable legal question, including legal malpractice issues.
>
> [T]he record does not establish the frequency or number of times that Justice Wallace dealt with legal malpractice issues as a lawyer, judge or justice, or specify the level of involvement he had regarding legal malpractice. Finally, the record is devoid of any evidence regarding Justice Wallace's participation in seminars or conferences, or any writings or publications authored by him on the subject of legal malpractice.[3]

*Id.* at *13–14, n.5 (internal citations and quotations omitted).

*Cadel* is not alone in its reasoning that significant legal experience, without more, may not be sufficient to qualify an attorney as an expert in the area of legal malpractice. For instance, in *Landeen v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844 (S.D. Ind. 2007), the court acknowledged the proposed expert had considerable experience as an attorney in Indianapolis, but that there

---

[3] This second paragraph appears as a footnote to the preceding paragraph.

was no specialized training, experience, or education in his background that would qualify him as an expert on matters of legal malpractice. *Id.* at. 848. Thus, the motion to precluded the attorney's proposed expert testimony on legal malpractice was granted.

The decision in *Cadle* is well reasoned and particularly relevant here. Although Kiesel has significant experience in the patent application process, this alone is insufficient to qualify him as an expert on the issue of legal malpractice in the patent application process. Byrne has not demonstrated that Kiesel possesses any specialized knowledge or skill or has had specialized training or education in this area. Therefore, Kiesel does not meet the requirements in FED. R. EVID. 702 to be qualified as an expert on the issue of legal malpractice in the patent application process. Accordingly, the Defendants' motion to strike portions of Kiesel's affidavit will be granted insofar as his affidavit seeks to provides expert testimony concerning the Defendants' alleged negligence in failing to obtain a broader patent on Byrne's behalf.[4]

**B. The Defendants' Motion for Partial Summary Judgment Will be Granted.**

As previously discussed, one of the elements Byrne will have to prove at trial is that the Defendants' failure to obtain a broader patent constituted negligence. *Marrs*, 95 S.W.3d at 860. In addition, this is not a case in which the negligence would be readily apparent to a layperson, so expert testimony on the issue of legal malpractice is necessary to prove the Defendants' alleged negligence. *See Stephens*, 150 S.W.3d at 82.

---

[4] Whether other portions of Kiesel's affidavit should be stricken need not be addressed, because Byrne's claim cannot survive summary judgment without expert testimony on the issue of legal malpractice.

Summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Having held that Kiesel is not qualified to provide expert testimony on the issue of legal malpractice in the patent application process, Byrne is left with no expert witness through whose testimony he could establish the Defendants' alleged negligence. Therefore, Byrne cannot succeed on his claim alleging the Defendants committed legal malpractice by failing to obtain a broader patent.

### III. CONCLUSION

For the reasons explained herein, it is **ORDERED** as follows:

(1) The Defendants' motion for summary judgment [Record No. 45], construed as a motion for partial summary judgment, is **GRANTED**;

(2) The Defendants' motion to strike portions of William David Kiesel's affidavit [Record No. 58] is **GRANTED** insofar as his affidavit contains proposed expert testimony on the issue of negligence as it relates to the patent application process.

(3) The Defendants' motion to strike portions of Plaintiff Steven Byrne's affidavit [Record No. 57] is **DENIED** as moot.

This 30th day of July, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge