UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| STEVEN E. BYRNE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 08-102-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WOOD, HERRON & EVANS, LLP, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a motion for partial summary judgment by Defendants Wood, Herron & Evans, LLP and several individually-named defendants (collectively, the Defendants).[1] [Record No. 45] Plaintiff Steven Byrne alleges legal malpractice by the Defendants in connection with the prosecution of a patent. The Defendants argue that summary judgment is warranted with respect to this claim because Byrne cannot establish that they were negligent in prosecuting the patent. The Defendants further move to strike portions of affidavits by Byrne and patent attorney William David Kiesel which Byrne submitted in support of his brief opposing summary judgment. [Record Nos. 57, 58]

The Court previously granted the Defendants' summary judgment motion after finding that Kiesel was not qualified to give expert opinions regarding legal malpractice in the patent

---

[1] After the Defendants' motion for summary judgment was submitted, Byrne was granted leave to file an Amended Complaint, which added a second claim of legal malpractice and a claim of breach of fiduciary duty. [Record No. 69] Therefore, the current motion will be construed as a motion for partial summary judgment relating solely to the first legal malpractice claim.

-1-

application process.[2] [Record No. 75] Without expert testimony, Byrne could not demonstrate a genuine issue of material fact as to the Defendants' alleged negligence and as a result, summary judgment was appropriate. [*Id.*] However, the Court granted Byrne's subsequent motion to reconsider this ruling because a supplemental affidavit filed in the record showed that Kiesel may, in fact, be qualified to give expert testimony on the standard of care applicable to patent attorneys. [Record No. 87] Upon reconsideration, the Court finds that Kiesel is qualified to provide such testimony. However, for the reasons discussed below, the Court will grant, in part, the motions to strike portions of Kiesel's and Byrne's affidavits and grant the Defendants' motion for summary judgment.

## I.     BACKGROUND

In 1989, while operating a landscaping company, Byrne invented a stabilizing guide for the string, known as a flail, on a weed trimmer. The guide stabilized the flail during rotation, which permitted the weed trimmer to make a straight cut while being held in a vertical position. Essentially, a weed trimmer equipped with Byrne's invention could be used as an edger for curbs and sidewalks.

Byrne hired the Defendants in 1990 to prepare and prosecute a patent application for his invention. This patent application resulted in the issuance of U.S. Patent No. 5,115,870 (the '870 patent) in May 1992. However, in December 1992, the Defendants filed a reissue application on Byrne's behalf because errors in the '870 patent had resulted in a failure to claim the full

---

[2] Defendants' motion to strike portions of Kiesel's affidavit was granted to the extent it contained opinions on this subject. [Record No. 75] Their motion to strike portions of Byrne's affidavit was denied as moot. [*Id.*]

scope of patent rights to which Byrne was entitled. The only error relevant here was the failure to claim that the guard and guide means had a bearing surface positioned relative to the flail's rotating path, which stabilized the flail's wobble during rotation. In January 1995, U.S. Letters Reissue Patent No. 34,815 (the '815 patent) was issued to Byrne. The '815 patent contained the term "generally planar flail stabilizing surface" in every reissue claim.

In 2004, the Defendants filed a patent infringement action against Black & Decker on Byrne's behalf, alleging violations of his rights under the '815 patent. Common to all fourteen infringement claims asserted against Black & Decker was a description of the portion of the device that stabilizes the flail as having or including a "generally planar surface." Thus, the focus of the summary judgment inquiry was whether the wire edge guide on the Black & Decker trimmers included a "generally planar surface." Relying on the dictionary definition of the term "surface," this Court (per Senior District Judge William O. Bertelsman) concluded that the Black & Decker wire edge guide did not have a "surface" so as to bring it within the claim limitations of the '815 patent. Summary judgment was therefore granted in favor of Black & Decker. *See Byrne v. Black & Decker Corp.*, No. 04-262, 2006 U.S. Dist. LEXIS 24104 (E.D. Ky., Apr. 27, 2006).

On appeal, the Federal Circuit held that it was error to rely on the dictionary definition of the word "surface" and that the wire edge guide on the Black & Decker trimmers did indeed have a surface. *See Byrne v. Black & Decker Corp.*, 235 F. App'x 741, 745-46 (Fed. Cir. 2007). However, upon de novo review, the court affirmed the grant of summary judgment on the ground

that the surface of the Black & Decker wire edge guide was not "generally planar." *See id.* at 746. Specifically, the Federal Circuit concluded that

> [t]he surface of the U-shaped wire edge guide may lie in a plane, but it is not itself "generally planar" as required by the claims and the written description of the '815 patent. Though the U-shaped wire edge guard has a surface, this surface is not "generally planar" because it lacks the two dimensional nature described in the prosecution history. Furthermore, because our claim construction excludes a narrow circumferential lip based on a disclaimer made during prosecution, the U-shaped wire edge guard, which is also narrow, cannot be covered by the claims. Hence, Black & Decker's accused devices do not infringe the '815 patent.

*Id.*

After losing his patent infringement action in this Court and on appeal, Byrne filed the instant legal malpractice action. He alleges that the Defendants acted negligently in the patent application/reapplication process by including the term "generally planar" in the '815 patent's claims. Byrne contends that the Defendants should have pursued his hypothetical claim, which did not include this term. He asserts that his hypothetical claim would have been patentable over the prior art, namely, the Bartholomew Patent.

In their motion for summary judgment, the Defendants argue that inclusion of the term "generally planar" was necessary for Byrne's invention to be patentable in light of the Bartholomew Patent. Thus, they maintain that failure to obtain a broader patent without this term in its claims does not constitute negligence. And because Byrne cannot prove negligence, the Defendants assert that he cannot prevail on his legal malpractice claim.

The Defendants' summary judgment motion was the beginning of a veritable avalanche of filings that total more than 700 pages. Among these many documents were two affidavits attached to Byrne's response in opposition to the Defendants' motion. [Record No. 50] The first

affidavit contains Byrne's own testimony. [Record No. 50-2] The second contains the proposed expert testimony of a patent attorney, William David Kiesel. [Record No. 50-3] In response, the Defendants filed motions to strike significant portions of each of the affidavits. [Record Nos. 57, 58] The Court will reconsider the motions to strike, as well as the Defendants' motion for summary judgment, herein.

**II.    DISCUSSION**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. Thus, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) . Once this burden has been met, the party opposing summary judgment must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot merely rely upon assertions in its pleadings; rather, that party must

come forward with probative evidence, such as sworn affidavits, to support its claims. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 324. Furthermore, "evidence submitted in opposition to a motion for summary judgment must be admissible." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (internal quotation and alteration omitted); *see* Fed. R. Civ. P. 56(e) (affidavit opposing summary judgment "must . . . set out facts that would be admissible in evidence[] and show that the affiant is competent to testify on the matters stated"). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. To survive summary judgment, the nonmoving party must establish the existence of a genuine issue of material fact as to each essential element of its case. *See Celotex*, 477 U.S. at 322.

Under Kentucky law, a plaintiff must prove three elements to establish a legal malpractice claim: first, that an attorney–client relationship existed between the defendant attorney and the plaintiff; second, that the attorney breached his duty to exercise the ordinary care of a reasonably competent attorney in the same or similar circumstances — *i.e.*, attorney negligence; and third, that the attorney's negligence was the proximate cause of damage to the plaintiff. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). It is undisputed that an attorney–client relationship existed between Byrne and the Defendants. Thus, to overcome the Defendants' motion for summary judgment, Byrne must establish the existence of a genuine issue of material fact as to

each of the remaining two elements, breach and causation.[3]  *See Celotex*, 477 U.S. at 322; *Employers Ins.*, 69 F.3d at 102.

### A. Breach

In a legal malpractice action, the plaintiff must provide expert testimony to establish that the defendants violated the standard of care unless their negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it. *See Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. App. 2004). The negligence alleged in this case would not be readily apparent to a layperson. Byrne asserts that the Defendants acted negligently by

> not properly prosecuting the patent, including by employing the generally planar surface language in all of the reissue claims, by using the generally planar surface language while failing to make clear in the specification and history that this was not limited to a [sic] "a two-dimensional surface that is not narrow, but has a width less than the feed increment of the trimmer head," by not obtaining the hypothetical claim described herein, [and] for all the other reasons set forth herein and otherwise.

[Record No. 69, p. 7-8]  Thus, expert testimony is needed to help determine whether the Defendants were negligent in failing to obtain a broader patent. Byrne offers Kiesel's affidavit for this purpose.

---

3  Despite Byrne's protestations to the contrary, the Defendants' summary judgment motion is not limited to the issue of causation. [*See* Record No. 77, p. 12] To obtain summary judgment, the Defendants need only show the absence of an issue of material fact with regard to one element of Byrne's claim. *See Celotex*, 477 U.S. at 322-23. To survive summary judgment, however, Byrne must demonstrate that there is a genuine issue of material fact as to *each* element. *See id.* at 322 (summary judgment should be entered when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial"); *see also Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995) ("The pivotal question [when considering a summary judgment motion] is whether the party bearing the burden of proof has presented a jury question as to each element of its case.").

In his affidavit, Kiesel describes what he believes to be the standard of care for patent attorneys and opines that the Defendants failed to meet this standard at various points during their representation of Byrne. Kentucky Rule of Evidence 702, like Federal Rule of Evidence 702, provides that a witness may not give expert testimony unless he is qualified "by knowledge, skill, experience, training, or education."[4] Ky. R. Evid. 702; *see* Fed. R. Evid. 702. Thus, the threshold question with respect to admissibility of expert testimony is whether the witness is qualified as an expert. *See R.C. v. Commonwealth*, 101 S.W.3d 897, 900 (Ky. 2003) ("Expert opinion evidence is admissible so long as: (1) the witness is qualified to render an opinion on the subject matter . . . .").

As noted above, the Court previously found that Kiesel was not qualified to testify as an expert on legal malpractice (*i.e.*, the standard of care) in the patent application process. Following that ruling, Byrne moved to supplement the record with a second affidavit by Kiesel (the Supplemental Affidavit) that expanded upon his claimed qualifications. [Record No. 78] The Defendants did not oppose addition of the Supplemental Affidavit, and the Court therefore ordered it filed in the record. [Record Nos. 84, 87, 88] Having considered both affidavits, the Court now finds that Kiesel is qualified to provide expert testimony regarding some of the subjects discussed in his original affidavit.

---

4 Because state law provides the elements of Byrne's claim, Kiesel's qualification as an expert must be evaluated under Kentucky law. *See* Fed. R. Evid. 601 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."); *see also Legg v. Chopra*, 286 F.3d 286, 289-92 (6th Cir. 2002) (applying Rule 601 and concluding that a proposed expert's qualification to testify in a medical malpractice action should be determined pursuant to state law, whereas proposed expert testimony is subject to Federal Rule 702 and the *Daubert* analysis). This difference in rule is of minor consequence, however, as the state and federal rules controlling qualification of experts are identical in this instance. *See* Fed. R. Evid. 702; Ky. R. Evid. 702.

### 1. Kiesel's Qualification to Provide Expert Testimony Regarding the Standard of Care in Patent Prosecutions

Byrne asserts that Kiesel is qualified to give expert testimony regarding patent law and "the practice of patent attorneys in patent drafting, patent prosecution[,] and evaluation of patent infringement and/or validity issues." [Record No. 67, p. 2] According to his *curriculum vitae*, Kiesel earned a B.S. in mathematics, an M.S. in nuclear engineering, and a law degree from Louisiana State University. He has worked as a patent attorney for nearly forty years and has taught courses on patent law as an adjunct professor at Louisiana State University Law School. In addition, Kiesel has prepared expert reports or provided expert testimony on patent-related issues in numerous federal and state cases, including a 1999 trial in Colorado state court (the *Anodyne* case).

In his Supplemental Affidavit, Kiesel elaborates on the *Anodyne* case, in which he "was qualified as an expert witness by the Court with respect to legal malpractice in the patent application process" and "testified in substantial detail regarding the standard of care for an attorney during a patent prosecution." [Record No. 78-2, p. 1-2] Kiesel further notes that he "ha[s] previously opined in affidavits submitted in support of Motions for Summary Judgment or Markman Hearings on the standard of care in pursuing a patent application and legal malpractice." [*Id.*, p. 3] He emphasizes that his qualifications as an expert have thus far gone unchallenged.

The fact that a witness has previously testified as an expert does not automatically qualify him as such. *See Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1175 (1st Cir. 1992) (quoting with approval the lower court's finding that extensive experience as an expert

witness "is not a disqualification, but it is not an automatic qualification guaranteeing admission of expert testimony" (internal quotation marks omitted)); *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."). Nor does experience as an attorney in a certain area of law automatically make one an expert on the standard of care in that particular specialty. *See Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1163 (S.D. Cal. 2008) (finding former PTO Commissioner Harry F. Manbeck, Jr., who had more than 50 years of experience in the field of patent law, not qualified to give expert testimony regarding the standard of care applicable to patent attorneys). In this case, however, the Court is now satisfied that Kiesel possesses sufficient expertise by virtue of his knowledge and experience to provide testimony regarding the standard of care in the patent application process. *See* Ky. R. Evid. 702.

### 2. Kiesel's Qualification to Provide Other Expert Testimony

Kiesel offers a number of opinions relating to the technical aspects of the Byrne patent and the prior art, including novelty, anticipation, obviousness, and infringement. While "patent lawyers are often qualified to testify as technical experts, . . . such a qualification must derive from a lawyer's technical qualifications in the pertinent art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).[5] Byrne acknowledges that Kiesel is not skilled in the art of string trimmers. [*See* Record No. 67, p. 2] Nevertheless, he contends that

---

5 The Court is aware that *Sundance* was an infringement case, not a legal malpractice case. This distinction does not make the Federal Circuit's reasoning in *Sundance* inapplicable here, however, since the causation element of Byrne's malpractice claim turns on the "case within the case": the Black & Decker infringement action.

it is proper for Kiesel to give expert testimony on the technical aspects of the patents because Kiesel relies upon Byrne's affidavit, and Byrne is himself a person skilled in the art. According to Byrne, "the[] two affidavits work together as they should, each supporting the other with respect to technical matters and patent matters." [*Id.*]

The Court notes that the cases Byrne cites in support of this argument were decided before the Federal Circuit's unequivocal holding in *Sundance* that a patent attorney without a technical background in the relevant art is not qualified to testify about technical matters. *See Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02-22555-CIV-ALTONAGA/Bandstra, 2004 U.S. Dist. LEXIS 30795 (S.D. Fla., Mar. 11, 2004); *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132 (N.D. Cal. 2003); *Lemelson v. Gen. Mills, Inc.*, No. 77 C 4558, 1987 U.S. Dist. LEXIS 11117 (N.D. Ill., Dec. 1, 1987). [Record No. 67, p. 8-9] However, even if Byrne were correct that a patent expert may rely on a technical expert's affidavit as the basis for opinions regarding technical matters, such a rule would be of no help to him here since, as will be explained below, the Court finds that Byrne is not qualified as an expert on these subjects. Thus, the portions of Kiesel's affidavit containing opinions as to technical matters will be stricken.

Likewise, because he is not skilled in the relevant art, Kiesel may not opine as to what the examiner would have done or what the examiner was thinking. *See Am. Med. Sys. v. Laser Peripherals, LLC*, No. 08-4798 (JNE/FLN), 2010 U.S. Dist. LEXIS 47390 (D. Minn., May 13, 2010), at *37-*38 (excluding proposed expert testimony of patent attorney, a former patent examiner, as to "what the examiner believed or would have done"); *Pharmacia Corp. v. Par Pharm., Inc.*, No. 01-6011(SRC), 2004 U.S. Dist. LEXIS 30988, at *5 (D.N.J., Feb. 18, 2004)

("[C]ourts will not permit an expert to testify regarding what a patent examiner would have done unless the expert is experienced in the technology at issue."); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, No. C 92-20643 RMW, 1995 U.S. Dist. LEXIS 22335, at *8 (N.D. Cal., Apr. 25, 1995) (precluding testimony by former patent examiner and member of the Patent Office Board of Patent Appeals and Interferences regarding "what the examiner would have done if [the expert] were the examiner, or if the examiner had different information," as such testimony "would be irrelevant speculation" and the proposed expert was not skilled in the relevant art). The portions of Kiesel's affidavit containing such opinions will therefore also be stricken.

Finally, Kiesel opines that the Defendants' argument on appeal before the Federal Circuit was negligent. [*See* Record No. 50-3, p. 12-14] However, this portion of Kiesel's affidavit is not relevant to the instant motion because it relates to the second claim of legal malpractice asserted in Byrne's Amended Complaint, which was filed after the Defendants' motion for summary judgment. Therefore, the Defendants' motion to strike will also be granted with respect to the paragraphs of the affidavit that appear under the heading "The Black & Decker Suit."

### B. Causation

To overcome the Defendants' summary judgment motion, Byrne must also establish a genuine issue of material fact as to causation — *i.e.*, that the Defendants' alleged negligence was the proximate cause of his damages. *See Celotex*, 477 U.S. at 322-23; *Marrs*, 95 S.W.3d at 860. In a legal malpractice action, the element of causation hinges on the "suit within the suit": the

plaintiff must show that he would more likely have prevailed in the underlying action if not for the defendant's allegedly negligent acts. *See Marrs*, 95 S.W.3d at 860. Byrne alleges that as a result of the Defendants' failure to properly prosecute his patent, he lost the Black & Decker infringement suit and did not receive damages to which he was otherwise entitled. [Record No. 69, p. 9] Thus, to establish the existence of a genuine issue of material fact as to the causation element of his malpractice claim, Byrne must show that his infringement suit against Black & Decker would more likely have been successful had the Defendants not included the "generally planar" language in the '815 patent and instead pursued and obtained his hypothetical claim. The Defendants, however, maintain that a claim without the "generally planar" language was not patentable to begin with. Byrne therefore must demonstrate, first, that the Defendants could have obtained a valid patent that did not include the "generally planar" limitation, and second, that such a patent would have been infringed by Black & Decker.

As with the element of breach, expert testimony is necessary to establish causation in a legal malpractice action if the proximate cause of the plaintiff's injury would not be obvious to a layperson. *See Stephens*, 150 S.W.3d at 81-82. In this case, the issue of causation involves questions of patentability (of the hypothetical claim), as well as infringement. *See Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1269 (Fed. Cir. 2007) (concluding, in suit alleging negligent patent prosecution, that "[b]ecause the underlying suit . . . is a patent infringement action . . . , the district court will have to adjudicate, hypothetically, the merits of the infringement claim"). The Court has already determined that

Kiesel is not qualified to testify regarding technical matters because he is not skilled in the relevant art. This leaves Byrne's own affidavit as the sole possible source of such testimony.

In his affidavit, Byrne declares that he is "a person of more than ordinary skill in the arts relevant to design[,] manufacture and use of string trimmers." [Record No. 50-2, p. 2] However, Byrne provides no information from which the Court could conclude that he is qualified to testify as an expert on this subject. The sum of Byrne's qualifications, as set forth in his affidavit, are a bachelor of science degree in an unspecified area of study and experience "operating a landscaping company that maintained the lawns of apartment complexes and condominiums."[6] [*Id.*, p. 1] Certainly not every person with a college degree and landscaping experience is qualified to give expert testimony regarding the technical aspects of string trimmers.

Even if Byrne is, in fact, a person of ordinary skill in the art, this does not necessarily qualify him as an expert. *See Sundance*, 550 F.3d at 1363 ("We do not, of course, suggest that being a person of ordinary skill in the art automatically entitles a witness to testify as an expert on [technical] or other matters."). Rather, as the Federal Circuit has observed, "[a]dmission of expert testimony remains subject to the Rules of Evidence and is committed to the discretion of the district court." *Id.* Byrne has failed to show that he is "qualified as an expert by knowledge, skill, experience, training, or education," Ky. R. Evid. 702, and thus he may not testify as an

---

6 The statement regarding Byrne's landscaping work appears to be offered as background information, rather than as an indication of the basis for Byrne's claimed expertise.

expert concerning the causation element of his legal malpractice claim.[7] Without such expert testimony, the claim cannot survive summary judgment. *See Stephens*, 150 S.W.3d at 81-82.

### III. CONCLUSION

Byrne has failed to present admissible expert testimony to establish a genuine issue of material fact with respect to the causation element of his legal malpractice claim. Accordingly, it is hereby **ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment [Record No. 45], construed as a motion for partial summary judgment, is **GRANTED**.

(2) Defendants' Motion to Strike Portions of the Affidavit of Steven Byrne in Support of Plaintiff Byrne's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Record No. 57] is **GRANTED** insofar as the affidavit contains proposed expert testimony concerning technical aspects of the Byrne and Bartholomew patents, the patentability of a hypothetical claim, and whether such a claim would have been infringed by Black & Decker.

(3) Defendants' Motion to Strike Portions of the Affidavit of William David Kiesel in Support of Plaintiff Byrne's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Record No. 58] is **GRANTED** insofar as the affidavit contains proposed expert testimony concerning technical aspects of the Byrne and Bartholomew patents, the patentability

---

7 Byrne is advised that any request for reconsideration of the Court's ruling on the ground that he had no notice the Court would consider his qualifications as an expert would not be well-taken. Kentucky law concerning the necessity of expert testimony in a legal malpractice action is well-established. Moreover, the federal rule governing summary judgment makes clear that an affidavit submitted in opposition to a motion for summary judgment must "show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).

of a hypothetical claim, whether such a claim would have been infringed by Black & Decker, and alleged negligence by the Defendants in the Black & Decker infringement suit.

This 26th day of August, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge